**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JANE DOE *on behalf of* M.F., | § § | CIVIL ACTION NO. 4:19-cv-01297 |
| Plaintiff, | § § § | |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| HARRIS COUNTY PRECINCT SIX CONSTABLE SYLVIA TREVINO *et al*, | § § § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION
GRANTING MOTIONS TO DISMISS**

Before the Court are motions to dismiss filed by Defendants Harris County, Constable Heliodoro Martinez, and The Lynd Company. Dkts 19, 21, 22.

Upon consideration, the claims against Harris County and Martinez are dismissed without prejudice. The claims against the Lynd Company are dismissed with prejudice.

1. Background

This is a civil rights action. Doe's amended complaint pleads as follows.

Defendant Brandon Glispy was a Constable for Harris County Precinct 6. He was hired in the fall of 2016. Dkt 53 at 17. He also worked as an off-duty officer at Heatherbrook Apartments, which Lynd Company manages. Dkt 16 at ¶¶ 35, 39.

This lawsuit concerns a serious incident between Jane Doe and Glispy on April 24, 2017. Glispy was on duty that night driving his patrol car. Id at ¶ 12. Doe was out driving as well. Id

at ¶ 11. Glispy pulled Doe over three separate times, purportedly for a broken headlight. He ordered Doe on the third stop to follow him to an empty parking lot, where he sexually assaulted her. Id at ¶¶ 21–22, 49–50.

Glispy was later arrested and charged with sexual assault. A jury convicted and sentenced him to eight years in prison. Id at ¶¶ 31–32. He is currently serving out that prison sentence.

Doe asserts that hers was not Glispy's first sexual assault, alleging that he sexually assaulted a woman in a Popeye's restaurant in January 2017. Id at ¶¶ 36–37. She also asserts that he may have assaulted more women at prior jobs working for "the juvenile detention center and for Houston Housing Authority." Id at ¶ 34.

Doe asserts causes of action against Glispy and several other defendants. She sued him in his individual capacity, but he has not appeared or answered after service. Id at ¶ 10.

Doe also sued Constable Sylvia Trevino and former Constable Martinez in their individual capacities. Trevino was the elected Constable of Harris County Precinct 6 at the time of the January and April 2017 incidents. Martinez was the previously elected constable when Glispy was hired. Doe asserts that they are both liable for failure to train, supervise, and discipline Glispy. She further asserts that Martinez is liable for failure to hire a qualified constable. Id at ¶¶ 65–85.

Doe additionally sued Harris County. She alleges that the county is liable under 28 USC § 1983 on theories of an unconstitutional policy, pattern, and practice; a failure to train or to supervise; and ratification. Id at ¶¶ 52–65.

Doe also sued Lynd Company for negligence and gross negligence. She alleges that a tenant at Heatherbrook Apartments told an agent of Lynd Company about Glispy's "abhorrent behavior" and "predatory actions." Id at ¶ 90. Doe asserts that the individual who Glispy sexually assaulted in January 2017 at the Popeye's restaurant reported the incident to Heatherbrook Apartments. Id at ¶ 39. Doe claims that with this knowledge, Lynd Company owed a duty to the general public to warn about Glispy's criminal behavior. Id at ¶¶ 86–91.

Doe filed her complaint in state court in March 2019. Dkt 1-4 at 4. Following removal of the action, Harris County, Trevino, and Martinez answered. Dkts 7, 8, 9. Lynd Company filed a motion to dismiss. Dkt 12. Doe chose to file an amended complaint in May 2019. Dkt 16. Harris County, Martinez, and Lynd Company all then moved to dismiss under Rule 12(b)(6). Dkts 19, 21, 22. Neither Glispy nor Trevino have moved to dismiss.

The Court heard extensive argument in January 2020. Dkt 53 (transcript). The Court stayed discovery pending resolution of these motions. Discovery will now move forward in this action.

    2.   Legal standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted."

Read together, the Supreme Court has held that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 555.

A complaint must therefore contain enough facts to state a claim to relief that is plausible on its face. *Twombly*, 550 US at 570. A claim has *facial plausibility* "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. This standard on plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id at 678, quoting *Twombly*, 550 US at 556.

Review on motion to dismiss under Rule 12(b)(6) is constrained. The reviewing court must accept all well-pleaded

facts as true and view them in the light most favorable to the plaintiff. *Walker v Beaumont Independent School District*, 938 F3d 724, 735 (5th Cir 2019) (citations omitted). The court must also generally limit itself to the contents of the pleadings and its attachments. *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014) (citations omitted). But it may consider matters appropriate to judicial notice. *Funk v Stryker Corp*, 631 F3d 777, 783 (5th Cir 2011) (citations omitted).

A court should typically give a plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice for factual pleading insufficiency, unless doing so would be futile. See *Stripling v Jordan Production Co LLC*, 234 F3d 863, 872–73 (5th Cir 2000).

### 3. Analysis

#### a. Lynd Company's motion to dismiss

The parties agree that Glispy worked for Lynd Company as an off-duty officer. Doe brings claims for negligence and gross negligence, asserting that Lynd Company "owed a duty to the general public" to warn about Glispy's criminal behavior once it became aware of his "sexual harassment and assault activities." Dkt 16 at ¶¶ 89, 91. At hearing, Doe narrowed this solely to a duty to report such behavior to the authorities. Dkt 53 at 38–39. Lynd Company argues to the contrary that Doe's claims fail because she cannot establish that it owed her a duty under Texas law in these circumstances. Dkt 22 at 4–7.

To plead negligence under Texas law, the plaintiff must establish "a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." *D. Houston Inc v Love*, 92 SW3d 450, 454 (Tex 2002). Gross negligence is a heightened form of negligence that also requires the plaintiff to establish a legal duty. *Mobil Oil Corporation v Ellender*, 968 SW2d 917, 921 (Tex 1998). The "existence and violation of a legal duty" owed by the defendant to the plaintiff is thus a fundamental inquiry. *Abalos v Oil Development Co of Texas*, 544 SW2d 627, 631 (Tex 1976). As held by the Texas Supreme Court, "Whether a legal duty exists is a threshold question of law for the court to decide from the facts surrounding the occurrence in question. If there is no duty, there cannot be negligence

4

liability." *Thapar v Zezulka*, 994 SW2d 635, 637 (Tex 1999) (citations omitted).

Doe's claim would impose a duty on Lynd Company to warn the general public "of an allegation of sexual assault concerning" Glispy. Dkt 30 at 12. But her response concedes that an actor generally has no legal duty under Texas law to protect another from the criminal acts of a third person. Ibid, citing *Centeq Realty Inc v Siegler*, 899 SW2d 195, 197 (Tex 1995).

Texas law does recognize some narrow exceptions to this rule. See *San Benito Bank & Trust Co v Landair Travels*, 31 SW3d 312, 317–18 (Tex App 2000). One is made for cases involving premises liability. Id at 318. Another is when a special relationship exists between the actor and the third person that imposes a duty upon the actor to control the third person's conduct. Id at 319. The last is when a party creates the dangerous situation that ultimately causes harm. Ibid. Doe has not pleaded any of these recognized exceptions.

Doe instead asserts that Texas courts have carved out a limited duty in sexual assault cases. She relies primarily on the decision of the Texas Supreme Court in *Golden Spread Council Inc No 562 of Boy Scouts of America v Akins* as authority for imposing a duty under the circumstances presented here. 926 SW2d 287 (Tex 1996). In that case, Golden Spread Council was a local scouting organization. Two of its employees learned of complaints that an assistant scoutmaster was molesting certain boys in the troop. Id at 289. GSC neither relayed the allegations to local law enforcement nor conducted any further investigation. Ibid. A GSC employee with knowledge of the allegations against the scoutmaster then introduced him to a church that wanted to start its own troop—without informing the church of the allegations. Ibid. That church ultimately selected him as its scoutmaster. And he subsequently molested or attempted to molest one of the scouts in that troop. The boy's parents then sued both the Boy Scouts of America and GSC.

The primary task of the Texas Supreme Court was to decide whether each of those entities owed a duty. It imposed no duty on the Boy Scouts of America, which had no prior knowledge of the allegations against the scoutmaster. Id at 290. But GSC's

5

knowledge and conduct was different: "GSC's affirmative act of recommending [him] as a potential scoutmaster to the church created a duty on the part of GSC to use reasonable care in light of the information it had received." Id at 291. The Supreme Court was specific as to the scope of this limited duty: "[W]e hold that if GSC knew or should have known that [he] was peculiarly likely to molest boys, it had a duty not to recommend him as a scoutmaster. We impose no other duty on GSC than this." Id at 292.

*Golden Spread* does not reach the facts pertinent to Lynd Company here. Doe makes no allegation that Lynd Company took any affirmative act or made any recommendation to anyone. She alleges only that it "was aware of Glispy's abhorrent behavior but did nothing to stop it, prevent it, or report it." Dkt 16 at ¶ 90. Each of those would impose a duty on Lynd Company requiring an affirmative act of the sort specifically disavowed by the Texas Supreme Court.

Doe argued at hearing that Lynd Company's actions could be construed as an affirmative act of concealment of the allegations against Glispy. Dkt 53 at 42. But the Texas Supreme Court in *Golden Spread* also expressly rejected this type of duty: "GSC had no duty to investigate [the scoutmaster] on its own or to divulge to the church . . . or others the information it had received." 926 SW2d at 292. And even assuming foreseeability, Texas courts generally have declined to impose a duty to report to protect the general public. For example, see *Thapar*, 994 SW2d at 640 (mental-health professionals have no duty to warn third parties of threats by their patients); *San Benito Bank*, 31 SW3d at 321 (accountant and his lawyer had no duty to warn public of former employee who embezzled from them); *Williams v Sun Valley Hospital*, 723 SW2d 783, 787 (Tex App 1987) (hospital had no duty to warn public of mentally ill patient who left facility and committed crime); see also *Clark Fire Equipment Inc v Arkema Inc*, 176 FSupp3d 646, 649–50 (supply company had no duty to warn purchasing company of third party's fraudulent scheme).

Doe also relies on *Ira S. Bushey & Sons Inc v United States*, 398 F2d 167, 169 (2d Cir 1968). There, a drunken navy sailor returned to his ship and opened valves that flooded and damaged a drydock. The Second Circuit held the government vicariously liable under the doctrine of *respondeat superior*. Even though the sailor's action wasn't motivated by a purpose to serve his employer, the court found such liability proper because a "business enterprise cannot justly disclaim responsibility for accidents which may be fairly said to be characteristic of its activities," and the sailor's conduct "was not so 'unforeseeable' as to make it unfair to charge the government with responsibility." Id at 171.

*Bushey* is an inapt comparison. Doe alleges that at the time of the sexual assault Glispy was acting in the course and scope of his employment with Harris County, not Lynd Company. Dkt 16 at ¶¶ 10, 51. And so she only asserts liability in negligence against the latter, not *respondeat superior*. The Second Circuit emphasized the difference between the two: "[W]hat is reasonably foreseeable in this context (of respondeat superior) . . . is quite a different thing from the foreseeably unreasonable risk of harm that spells negligence . . . ." Ibid (citations omitted).

Texas law imposed no duty on Lynd Company to Doe under the facts pleaded here. Lynd Company filed its first motion to dismiss in April 2019. Dkt 12. Doe filed an amended complaint rather than respond to the motion, presenting additional facts associating Lynd Company with Glispy. Dkt 16. The Court finds that any further amendment would be futile. Doe's claims against Lynd Company are thus dismissed with prejudice.

> b. Martinez's motion to dismiss

Doe asserts claims against Martinez in his individual capacity. She predicates these claims on allegations of his failure to train and supervise deputy personnel, failure to hire a qualified constable, and failure to discipline for sexual misconduct. Dkt 16 at ¶¶ 74, 77, 80–81.

Doe does not allege or identify facts showing that Martinez affirmatively participated in Glispy's wrongdoing. Without personal participation by an official, the Fifth Circuit allows

supervisory liability under section 1983 in three circumstances relevant here.

The first is where the official implemented an unconstitutional policy that causally resulted in the constitutional injury. *Peña v City of Rio Grande City*, 879 F3d 613, 620 (5th Cir 2018), citing *Gates v Texas Department of Protective and Regulatory Services*, 537 F3d 404, 435 (5th Cir 2008). *Official municipal policy* includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v Thompson*, 563 US 51, 61 (2011). Liability attaches where "supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v Belt,* 828 F 2d 298, 304 (5th Cir 1987) (quotation marks and citations omitted). This standard requires more than conclusory assertions. As framed by the Fifth Circuit, a complaint's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Peña*, 879 F3d at 621, quoting *Spiller v City of Texas City, Police Department* 130 F3d 162, 167 (5th Cir 1997); see also *Oliver v Scott*, 276 F3d 736, 741 (5th Cir 2002) (necessary to plead specific conduct and facts giving rise to constitutional violation).

The second and third are where the supervisor either failed to supervise or to train the subordinate official, and a causal link exists between that failure and the violation of the plaintiff's rights. *Goodman v Harris County,* 571 F3d 388, 395 (5th Cir 2009) (citations omitted). The Fifth Circuit directs that the focus must be on the adequacy of the training or supervision in relation to the tasks the particular officer must perform. *Roberts v City of Shreveport,* 397 F3d 287, 293 (5th Cir 2005) (citations omitted). For instance, to defeat a motion to dismiss regarding training, the "plaintiff must allege with specificity how a particular training program is defective." Ibid.

Each of these three circumstances also require the defendant to have acted with deliberate indifference. *Porter v Epps*, 659 F3d 440, 446 (5th Cir 2011). *Deliberate indifference* is "a stringent standard of fault," one "requiring proof that a municipal actor

8

disregarded a known or obvious consequence of his action." Id at 446–47, quoting *Connick*, 563 US at 61. A supervisor's deliberate indifference generally requires a plaintiff to allege at least a pattern of similar violations. *Rios v City of Del Rio Texas,* 444 F3d 417, 427 (5th Cir 2006) (citations omitted).

i. Unconstitutional policy

Martinez argues that the amended complaint does not allege facts establishing that he "implemented unconstitutional policies that causally resulted in the injury." Dkt 21 at 4–5. The amended complaint makes only these conclusory statements as to such policies:

- o "Constable Martinez created a policy or custom under which unconstitutional practices occurred the stop and frisk in a traffic stop without any reasonable suspicion or probable cause for the stop"; and
- o "He created a policy or custom under which allowed the unconstitutional practices occurred the stop and frisk in a traffic stop without any reasonable suspicion or probable cause to frisk a female detainee, as a male officer, the failure to train and discipline for sexual misconduct, or allowed the continuance of such a policy or custom."

Dkt 16 at ¶¶ 79, 84 (errors in original).

These allegations do not meet Fifth Circuit precedent for two reasons. First, the plaintiff must plead "specific conduct" and "facts" giving rise to the asserted constitutional violation. *Oliver*, 276 F3d at 741. The conclusory assertions in the amended complaint are insufficient to establish the at-issue policy. Ibid. The allegations do not state whether the infringing policy or policies were formal written policies, decisions by policymakers, or persistent and widespread practices. And they fail to causally connect the at-issue policy to the underlying constitutional violation. See *Peña*, 879 F3d at 621–22 (noting that because police department's written taser policy was "causally irrelevant, it cannot demonstrate the persistent practice").

Second, nothing connects Martinez to the relevant time of any at-issue policy. The Court takes judicial notice that Trevino replaced Martinez as Constable of Harris County Precinct 6 as of January 1, 2017. See Harris County Election Results Archive, https://www.harrisvotes.com/HISTORY/20161108/cumulative/cumulative.pdf at 29. The amended complaint alleges in accord with this transition that it was Trevino who "was at all times relevant to this action the duly elected Constable of Harris County Texas." Dkt 16 at ¶ 6. The amended complaint also describes Trevino as the one who "fail[ed] to act on information indicating that unconstitutional acts were occurring, specifically, information of the prior sexual assault of the first female victim . . . in January 2017." Dkt 16 at ¶ 72.

Doe confirmed at hearing that Martinez was no longer the Constable of Harris County Precinct 6 at the time of the alleged constitutional violations in January and April of 2017. Dkt 53 at 14. More critically, her response acknowledges that "the policies in place at the time of the sexual assault were not Constable Martinez's policies." Dkt 26 at 10. Simply put, Martinez cannot be individually liable for law-enforcement and training policies that were not his own.

ii. Failure to train

The question remains whether the amended complaint alleges sufficient facts to establish potential liability for actions taken prior to Martinez leaving office at the end of December 2016. This would require facts showing that Martinez acted with deliberate indifference. Dkt 21 at 5–6. He notes that the amended complaint makes only conclusory and insufficient statements of an alleged failure to train, such as:

- o "He participated directly in the alleged constitutional violation by failing to adequately train, regularly train, failure to hire qualified constable";
- o "The failure to train and discipline for sexual misconduct, or allowed the continuance of such a policy or custom"; and
- o "He exhibited deliberate indifference to the rights of plaintiffs by failing to act on information

10

indicating that unconstitutional acts were occurring prior violations, involving sexual assaults by Constable Glispy, including one in January 2017."

Dkt 16 at ¶¶ 77, 80, 82 (errors in original).

This does not allege with the necessary specificity how Martinez's training was defective—or even what training he provided or failed to provide. See *Roberts,* 397 F3d at 293. It is also deficient as to deliberate indifference to a risk of constitutional violations. *Porter,* 659 F3d at 446. For instance, the amended complaint does not allege as to Martinez any knowledge of a "pattern of violations" necessary to demonstrate deliberate indifference. *Goodman,* 571 F3d at 395. Nor does it allege knowledge requiring a need for different or better training as to Glispy. And to the contrary, Martinez points out that the earliest specified event at the Popeye's in January 2017 occurred only after he left office. Dkt 21 at 4–6.

In her response and at hearing, Doe largely focused her claim against Martinez on an alleged failure to hire a qualified constable. Dkt 26 at 9–13. This included argument that Glispy sexually harassed and assaulted women prior to being hired as a constable, and that a comprehensive background check would have revealed these prior allegations. Dkt 53 at 16; Dkt 26 at 11–12. But no such allegations appear in the amended complaint, which includes only the unadorned assertion of a "failure to hire qualified constable." Dkt 16 at ¶ 77. Without more, this is also not enough to withstand a motion to dismiss.

iii. Failure to supervise

Martinez makes similar arguments against the failure-to-supervise claim. Dkt 21 at 5. The amended complaint proceeds on the following allegation: "Constable Heliodoro Martinez was grossly negligent in supervising subordinates (Brandin Glispy) who committed the wrongful acts." Dkt 16 at ¶ 81.

This is not sufficient for two principal reasons. First, *gross negligence* is a lesser and insufficient standard than *deliberate indifference.* As held by the Fifth Circuit, "Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Shumpert v City of Tupelo,*

905 F3d 310, 316 (5th Cir 2018) (quotation marks and citations omitted).

Second, as with the failure-to-train claim, it is conclusory. The amended complaint does not allege any other actual or specific facts to support deliberate indifference by Martinez regarding a failure to supervise.

### iv. Potential for repleading

The claims against Martinez are dismissed without prejudice. Doe notes that discovery has not yet commenced in this action. She requests permission to seek leave to replead her claims after discovery proceeds against Glispy and Trevino, who have not moved to dismiss. Dkt 26 at 16. Doe has not to this point alleged that Martinez was aware of prior allegations against Glispy. Dkt 53 at 53. And she does not know whether Martinez conducted a background investigation of Glispy before hiring him. Dkt 53 at 64–65. Doe may seek to replead her claims against Martinez if discovery reveals pertinent information on these points.

For his part, Martinez invokes the affirmative defense of qualified immunity. Dkt 21 at 7. "Qualified immunity is only applicable as a protective shield once a plaintiff has made out a claim against an official acting in his individual capacity." *Goodman*, 571 F3d at 396. Because the amended complaint does not at present state a claim against Martinez, analysis of this defense is unnecessary. Ibid. If Doe later seeks to replead her claim against him, Martinez may reassert a qualified immunity defense as against those specific and concrete allegations. See *Ybarra-Fuentes v City of Rosenberg*, 2018 WL 6019177, *8 (SD Tex).

### c. Harris County's motion to dismiss

Doe asserts three theories of liability under § 1983 against Harris County. One is that Harris County has a policy, pattern, and practice of condoning the criminal conduct of its deputies, including the stopping and frisking of citizens without probable cause. Dkt 16 at ¶ 63. Another is that it failed to adequately train, supervise, and discipline its employees with regard to engaging in sexual misconduct, sexual harassment, and sexual assault. Id at ¶ 53. The third is that it ratified the actions of Glispy by failing to discipline him. Id at ¶ 58.

### i. Policy, pattern, and practice

To establish municipal liability under § 1983, a plaintiff must show that an official policy promulgated by the municipal policymaker was the moving force behind the violation of a constitutional right. *Piotrowski v City of Houston*, 237 F3d 567, 578 (5th Cir 2001). This means that municipal liability under § 1983 doesn't extend merely on a *respondeat superior* basis. *Monell v Department of Social Services,* 436 US 658, 691 (1978).

The initial inquiry is identification of officials or governmental bodies "who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Bolton v City of Dallas, Texas*, 541 F3d 545, 548 (5th Cir 2008), quoting *McMillian v Monroe County,* 520 US 781, (1997). Whether an individual is a final policymaker for the county is a question of state law. *Bolton*, 541 F3d at 548.

The only potential policymakers identified in the amended complaint are Martinez and Trevino in their successive capacities as Constable for Harris County Precinct 6. Dkt 28 at 3. The Fifth Circuit has frequently applied Texas law in a variety of factual situations pertinent to municipal liability. It has consistently held as a matter of law that constables are not policymakers for the county, and so a county cannot be held liable for a constable's conduct. See *Rhode v Denson*, 776 F2d 107, 110 (5th Cir 1985); *Bowden v Jefferson County*, 676 F App'x 251, 254–55 (5th Cir 2017) (unpublished) (summarizing cases); see also *Harris County v Coats*, 2020 WL 581184, *9–10 (Tex App—Houston [14th Dist] 2020). This conclusion derives from the structure of local government in Texas. *Rhode*, 776 F2d at 109–10 (contrasting role of constable with that of sheriff, county treasurer, and county judge and concluding that constables lack power to make county policy).

Martinez and Trevino are or were the constable of one of Harris County's eight precincts. They can in some sense be viewed as decision makers for their precinct. But as a matter of law they are not policymakers for Harris County itself.

Doe suggested at hearing an additional potential policymaker—the individual responsible for conducting background checks and investigating potential hires for Harris

County. Dkt 53 at 80–82. It would be of no concern at this stage that Doe fails to articulate "the specific identity of the policymaker." *Groden v City of Dallas, Texas*, 826 F3d 280, 285 (5th Cir 2016). But she must still "plead *facts* that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." Id at 282 (emphasis in original). Having first introduced this potential policymaker at hearing, the amended complaint is devoid of any facts in this regard. It does not suggest that the person responsible for conducting background checks (assuming there is one) is a "legally authorized policymaker" for Harris County. And it neither pleads a specific policy in this regard, nor any facts to show that the legally authorized policymaker "promulgated or ratified the [policy] and thus that this policy was attributable to [Harris County]." Ibid.

Doe has not carried her burden under *Groden* to plead sufficient facts to meet the policymaker prong necessary to liability under § 1983. As such, the Court need not examine whether there was a "violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F3d at 578, citing *Monell*, 436 US at 694.

ii. Failure to train or to supervise

The standard applicable to an alleged failure to train or to supervise is the same as that for municipal liability under a deficient policy. *Brown v Bryan County,* 219 F3d 450, 457 (5th Cir 2000). For instance, failure to provide proper training is "a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." Ibid, quoting *City of Canton v Harris,* 489 US 378, 390 (1989). And so to establish municipal liability under § 1983 based on such theory, a plaintiff must plead that the training or hiring procedures of the municipality's policymaker were inadequate; that the policymaker was deliberately indifferent in adopting the hiring or training policy; and the inadequate hiring or training policy directly caused the plaintiff's injury. *Conner v Travis County*, 209 F3d 794, 796 (5th Cir 2000), quoting *Baker v Putnal,* 75 F3d 190, 200 (5th Cir 1996).

Doe's claim regarding failure to train or to supervise is deficient for the same reason as her policy claim—Martinez and Trevino are not policymakers for Harris County.

### iii. Ratification

The amended complaint alleges that Harris County "fully investigated the sexual assault allegations of Glispy, including the assault in January 2017 in the Popeye's restaurant, yet it did nothing to discipline any of their employees involved." Dkt 16 at ¶ 57. Doe argues that the county thereby "ratified or condoned the actions of Glispy." Dkt 28 at 10.

Supreme Court precedent generally permits such a theory. "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St Louis v Praprotnik*, 485 US 112, 127 (1988). But ratification liability requires that the authorized policymakers approve not only the subordinate's act, but also the basis for it. Ibid. This means that the policymaker must have actual knowledge of the improper basis for the subordinate's action and yet approve the action anyway. See *Beattie v Madison County School District*, 254 F3d 595, 604 (5th Cir 2001).

Doe's ratification theory fails to meet these standards. She again does not allege a Harris County policymaker that ratified Glispy's conduct. The amended complaint identifies no person by either name or job title with respect to any investigation alleged to have occurred. More importantly, the amended complaint identifies no Harris County policymaker who was aware of the investigation and disregarded it.

### iv. Potential for repleading

Each of Doe's claims against Harris County fail for the same essential reason—elected constables are not policymakers for the county, and so a county cannot be held liable for their conduct. The claims against Harris County are dismissed without prejudice. Doe requests permission to seek leave to replead her claims against Harris County after discovery proceeds with respect to Glispy and Trevino. Dkt 28 at 11. If discovery reveals an alternative policymaker—and as to the ratification claim,

sufficient knowledge of allegations against Glispy—Doe may seek such leave.

### 4. Conclusion

The motions to dismiss brought by Harris County, Martinez, and Lynd Company are GRANTED. Dkts 19, 21, 22.

The claims against both Harris County and Martinez are DISMISSED WITHOUT PREJUDICE.

The claims against Lynd Company are DISMISSED WITH PREJUDICE.

The stay on discovery in this matter is lifted.

SO ORDERED.

Signed on April 7, 2020, at Houston, Texas.

*[Signature]*
Hon. Charles Eskridge
United States District Judge